IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEONEL ESPINOZA,

        Plaintiff,                    No. CIV S-08-1806 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.               ORDER
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////
/////
/////
/////
/////

1

I. Factual and Procedural Background

In a decision dated November 9, 2005, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments related to a history of back pain with lumbar spondylosis and degenerative disc disease with radicular symptoms, history of myofascial pain, left knee chondromalacia, chronic lumbar and cervical strains and borderline intellectual functioning, but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff can perform light work limited to simple, routine, repetitive tasks; plaintiff cannot perform his past relevant work;

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

using Medical-Vocational Rule 202.16 as a framework for decision making, there are a significant number of jobs that plaintiff could perform; and plaintiff is not disabled. Administrative Transcript ("AT") 31-33.  Plaintiff contends the ALJ made an improper credibility finding and committed error in assessing plaintiff's residual functional capacity and relying on the Medical-Vocational guidelines in determining that plaintiff is not disabled.

II.  Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

III. Analysis

    A. Credibility

        Plaintiff contends the ALJ improperly discredited his testimony and that of his wife. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

        In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900

F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

With respect to the testimony and written statements of plaintiff's wife, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

Plaintiff testified that he could not work because of pain in his whole back, hips, shoulder and neck. AT 48. He further testified that he uses a cane because of pain and balance problems. AT 52. Plaintiff's wife testified that the doctors had said her husband could not return to his regular job as a farm worker and that the doctors had recommended light duty. AT 56. In a function report filled out by plaintiff's wife, she stated plaintiff takes care of pets, prepares breakfast and lunch for himself and dinner for the family, depending on his pain level, and performs minimal light house cleaning. AT 114-115. She further stated plaintiff goes out daily and shops for groceries and household items and attends church on a weekly basis. AT 116-117.

The ALJ discredited plaintiff's claim of being unable to perform work at any exertional level due to pain on the basis that the claimed level of pain was inconsistent with plaintiff's reported activities of daily living. AT 29, 115, 124, 204, 236, 271, 328, 329, 406, 415. While plaintiff is correct that the reported activities of daily living do not mandate a finding that plaintiff is able to work a forty hour work week, the ALJ reasonably concluded that such activities are inconsistent with the level of pain plaintiff claimed and was a valid reason for

discrediting plaintiff's testimony. The ALJ also appropriately considered the benign objective findings, lack of muscle atrophy commonly associated with severe pain and the incongruity between the claims of plaintiff and his wife of a deteriorating physical condition and the lack of evidence in the medical record of any change in treatment. AT 29, 30, 162-166, 202-214, 217, 231, 290, 300, 377, 383, 416-421. The ALJ specifically noted the third party witness statements and the testimony of plaintiff's wife. AT 29. The reason given by the ALJ for rejecting the testimony of plaintiff's wife, i.e., that it was inconsistent with the medical record, was germane and supported by the record. AT 30. With respect to the statements of plaintiff and his wife that a cane was necessary and medically prescribed, the ALJ properly discounted this testimony as not consistent with the record.[2] AT 26, 328, 415, 419. The factors considered by the ALJ were all valid and supported by the record. The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

      B. <u>Residual Functional Capacity and Medical-Vocational Guidelines</u>

Plaintiff contends that substantial evidence does not support the ALJ's residual functional capacity finding. Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); <u>see</u> also <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

No treating physician opined as to plaintiff's residual functional capacity. However, the physician who repeatedly examined plaintiff for purposes of the workers' compensation proceedings, Dr. Magnussen, assessed plaintiff with the ability to perform work

---

[2] Dr. Snook reported that plaintiff's gait was cane assisted. Dr. Snook's records are ambiguous as to whether this was an objective finding or a notation that plaintiff was bearing a cane during office visits. In light of the other record evidence that plaintiff carried a cane but did not use it for weight bearing and did not use a cane around the house, and the objective findings that did not support a finding that a cane was medically necessary, the court finds that substantial evidence supports the ALJ's finding on this credibility issue.

that was less than "heavy" work[3] and his treating physician released plaintiff to full duty. AT 166, 214, 217, 424. The ALJ properly relied on the opinion of the state agency physician regarding plaintiff's physical functional capacity, in light of any record medical opinions to the contrary. AT 30, 320-326.[4] The ALJ's assessment of plaintiff's mental functional capacity was properly based on the findings of the consultative psychological examiner, Dr. Petrides. AT 29, 330. In light of this evidence, the ALJ's assessment that plaintiff could perform light work involving the performance of simple, routine tasks is supported by substantial evidence. AT 32.

Plaintiff further contends the ALJ should have taken the testimony of a vocational expert instead of relying on the grids. The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the grids,

---

[3] Plaintiff asserts the ALJ erroneously omitted the limitations on repetitive motions of the neck and sitting assessed by Dr. Magnussen on August 27, 2001. AT 232. The doctor specifically noted that the limitations on repetitive motions of the neck were subsumed under the disability precluding very heavy work. In later evaluations, Dr. Magnussen did not assess any limitations on repetitive sitting. AT 206, 424. There was no error in failing to include these limitations in the residual functional capacity finding.

[4] The court finds no error in the ALJ's failure to specifically address the conclusions of a vocational assessment conducted in August 2001. AT 182-185. Dr. Magnussen, offering a medical opinion of that assessment, concluded that the vocational assessment reflected a great deal of subjectivity, which was unsupported by objective findings. AT 217.

however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[5] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

In this case, plaintiff failed to establish nonexertional limitations precluding use of the grids. Plaintiff's subjective complaints were properly discredited and there were no nonexertional limitations supported in the record. There was no error at step five of the sequential analysis.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross-motion for summary judgment is granted.

DATED: September 30, 2009.

_____
U.S. MAGISTRATE JUDGE

006
espinoza.ss

---

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n.6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a(c); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n.7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).